1

2   Arthur E. Ortiz, WSBA No. 26676
    Email: arthur@aeolegal.com
3   The Law Office of Arthur E. Ortiz
    6015 California Ave. S.W., No. 203
    Seattle, WA 98136
4   Tel.: (206) 898-5704

5

6

7

8

9

10

11                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
12                               AT SEATTLE

13

14   CHRISTINE TAVARES,

             Plaintiff,                          No.
15
          vs.
16
     ALABAMA HOUSING FINANCE AUTHORITY,          COMPLAINT FOR INJUNCTIVE RELIEF
17   a foreign public corporation doing business in   ORDERING THE PERMANENT
     Washington as SERVISOLUTIONS                RESTRAINT OF THE FORECLOSURE
18                                               SALE AND FOR RECOVERY OF DAMAGES

             Defendant.
19                                                JURY DEMANDED

20

21       This case involves a working single mother who is raising six minor children while holding

22   down a job and fighting off both sexual and financial predators. Plaintiff, Christine Tavares,

23   commences this lawsuit to recover compensation for injury and damages caused by defendant

24   ServiSolution's failure to comply with required mortgage loss mitigation, by and through her

25   attorney, Arthur E. Ortiz, alleges as follows:

26   **COMPLAINT FOR INJUNCTION**                           ARTHUR  E. ORTIZ, ATTORNEY
     **AND DAMAGES**                                        6015 CALIFORNIA AVE. S.W., NO. 203
         Page - 1                                           SEATTLE, WASHINGTON  98136
                                                            TEL 206-898-5704      arthur@aeolegal.com

28

1

2

## I. **PARTIES**

3

1.        Plaintiff, Christine Tavares (hereinafter referred to as, "Plaintiff" or the "Ms.

4

Tavares") is and at all times pertinent to this Complaint, and at all times material to this action

5

residing in Mount Vernon, Skagit County, Washington, and is the residing co-owner of the real

6

property at issue in this action. Ms. Tavares is the single mother of six minor children, two of

7

which are twins.

8

2.        Defendant, ServiSolutions is the mortgage servicing division of the Alabama

9

Housing Finance Authority (*hereinafter* "AHFA") headquartered in Montogmery, Alabama.  AHFA

10

is a foreign public corporation servicing loans as ServiSolutions in a number of states outside of

11

Alabama, including Washington.

12

6.        Defendant AHFA's roles as service provider are defined in section1002(26) of the

13

Dodd-Frank Act as "any person that provides a material service to a covered person in

14

connection with the offering or provision by such covered person of a consumer financial product

15

or service" 12 USC §5481(26) and consumer financial law is defined as those laws enumerated

16

by the Act. 12 USC §5481(14). Among the enumerated consumer laws laws under the Act are

17

the Real Estate Settlement Procedures Act ("RESPA"), 12 USC §5481(14)(M); the Truth in

18

Lending Act ("TILA"), 12 USC §5481(14)(O), the Fair Debt Collection Practices Act, 12 USC

19

§5481(14)(H), the Fair Credit Reporting Act, 12 USC §5481(14)(F), and also the Equal Credit

20

Opportunity Act, 12 USC §5481(14)(D).

21

7.        AHFA's roles are defined in 24 C.F.R. §100.141 of the Fair Housing Act as

22

someone who "engages in a residential real estate-related lending transaction."

23

8.        AHFA's roles are also defined in RESPA's Subpart A – General Provisions

24

Coverage – 12 C.F.R. 1024.5(a) *fn.* 4 as "financial institutions either regulated by, or whose

25

deposits or accounts are insured by any agency of the federal government."

26

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 2

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON  98136
TEL 206-898-5704       arthur@aeolegal.com

28

9.        Upon information and belief gleaned from the face of the note andthe deed of

trust, as indicated, "FHA CASE NO. 566-1228538-703" the loan secured by the subject property

(*hereinafter* "the loan") was and/or is, a federally insured loan.

10.       Plaintiffs hereby reserve the right to amend the parties and causes of action

throughout this complaint to conform to the evidence.


## II.        JURISDICTION AND VENUE

12.       This Court has original jurisdiction over the subject matter of this action pursuant

to both 28 U.S.C. § 1331 which grants jurisdiction over actions presenting a federal question and

28 U.S.C. §1332 because Plaintiffs and Defendants are citizens of different states and the total

amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.       This Court has supplemental jurisdiction over Plaintiff's claims arising under the

laws of Washington pursuant to 28 U.S.C. §1367(a), because those claims are so related to

Plaintiffs' claims under Federal law that they form part of the same case or controversy.

14.       Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events

or omissions giving rise to the claims described herein occurred in the State ofWashington and

the subject property is situated in Skagit County, Washington.


## III.        THE FACTS

15.       On March 24, 2014, Ms. Tavares and then domestic partner and father of three of

her six children, Mr. Edward Anzaldua, purchased the subject home by executing a promissory

note made to the order of Cobalt Mortgage, Inc. and its successors and assigns. Ex. A,  Ortiz

Declaration. (*hereinafter* "Ortiz") The amount they borrowed was $309,294.00.

16.       To secure payment of the note, Ms. Tavares and Mr. Anzaldua also executed a

Deed of Trust against their residence. Ortiz Ex. B. The Deed of Trust named Chicago Title

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 3

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON  98136
TEL 206-898-5704       arthur@aeolegal.com

Insurance Company as Trustee, Cobalt Mortgage Inc., as Lender, and the Mortgage Electronic Registration System ("MERS") as "beneficiary."  *Id.* Ex. B.

17.          From the beginning, their loan was an FHA insured loan[1]  Ms. Tavares and Mr. Anzaldua paid for insurance premiums, upfront and embedded in their monthly payments.

18.          For the following year Ms. Tavares and Mr. Anzaldua, timely paid their every monthly mortgage payment and were current on their loan.

19.          Sometime around March 2015, AHFA, through ServiSolutions informed plaintiff that their monthly mortgage payment would decrease. By April 2015 the monthly payment had gone down from approximately $2,250 to $2,075. Declaration of Christine Tavares (*hereinafter* "Tavarez"), ¶6.

20.          On Thanksgiving 2015, plaintiff, Ms. Tavares, discovered that Mr. Anzaldua had sexually assaulted her oldest daughter, then fifteen. Ms. Tavares obtained a restraining order protecting her daughter and Mr. Alzaldua was moved out November 26, 2015[2] Tavares, ¶7.

21.          Afterward, Mr, Anzaldua made the mortgage payments from December 2015 to around April of 2016.  Tavares, ¶8.

22.          Around April 2016, ServiSolutions suddenly raised the monthly mortgage

---

1     With regard to mortgage insurance, Partial or Full Claims act much like advance claims in other insurance contexts. Partial Claims made against FHA's Mutual Mortgage Insurance Fund are paid in the form of a HUD non-interest bearing loan to the borrower, and that HUD loan (or partial claim 'proceeds') brings the borrower current by partially or fully funding the reinstatement of the loan and then it becomes FHA's lien against the property. *24 CFR §207.258, 24 CFR §203.371, HUD Mortgagee Letter 2012-22, and HUD Mortgagee Letter 2013-19.* An FHA claim can be used alone to reinstate the loan *(24 CFR §203.414, "*Where a claim for partial insurance benefits is filed in accordance with §203.371, the amount of the insurance benefits shall consist of the arrearage..."), or in tandem with a loan modification to bring the homeowner current. *HUD Mortgagee Letter 2012-22.* FHA then takes the note and records the lien. *24 CFR 371(d).* Mortgage insurance is also supposed to be continuing. *24 CFR §203.341.*

2  Filed under Order Sealing Document of November 30, 2015, in the Washington State Superior Court for Skagit County, *State v. Anzaldua,* 15-1-01069-6.

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 4

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON  98136
TEL 206-898-5704      arthur@aeolegal.com

payment by around $600, nearly four hundred more than the original monthly payment.Tavares, ¶9.

23.        Shortly after ServiSolutions suddenly increased the monthly mortgage payment, Mr. Anzaldua stopped making the mortgage payments and instead started paying Ms. Tavares monthly child support payments of $1,000.00, consisting of $500 bi-weekly payments.Tavares, ¶10.

24.        By June 2016, Ms. Tavares was financially pressed by the credit card debt created when living with Mr. Anzaldua and Mr. Anzaldua's reduction in monthly payments. Ms. Tavares contacted ServiSolutions to ask if it would accept a partial payment and it refused. Tavares, ¶11.

25.        On or around the same time, ServiSolutions informed Ms. Tavares that if she wanted a loan modification, she would have to default.*Id.*

26.        After defaulting, around April-June 2016, Ms. Tavares approached ServiSolutions to inquire about modifying her mortgage loan. ServiSolutions informed Ms. Tavares that Mr.Anzaldua would also have to apply. When Ms. Tavares explained that Mr. Anzaldua was no longer a resident borrower, SeriSolutions told her that they would require a signed quitclaim deed from Mr. Anzaldua. Tavares ¶12.

27.        Ms. Tavares filed for Chapter 7 bankruptcy in September of 2016 and had the credit card debt that Mr. Anzaldua left her with discharged in March 2017.  Tavares ¶13.

28.        The HAMP Program terminated effective December 31, 2016. §709(b), Consolidated Appropriations Act, 2016, P.L. 114-113, 129 STAT. 3030.

29.        In May, 2017, Ms. Tavares engaged a housing counselor to help her apply for a loan modification. When she contacted ServiSolutions to retrieve documents that her housing counselors requested, ServiSolutions tried to talk Ms. Tavares out of using her housing

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 5

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

counselors at Parkview Services. ServiSolutions told her it would be much easier without the "middleman."

30.        In the same conversation Ms. Tavares also attempted to confirm ServiSolution's requirement of a signed quitclaim deed from Mr. Anzaldua.  This time ServiSolutions stated a signed quitclaim deed would not be helpful.

31.        On June 15, 2017 Ms. Tavares submitted a complete modification application to ServiSolutions through a housing counselor. ServiSolution never responded to the application other than request updated income data and deny the use of child support in the calculation of Ms. Tavares' income. Declaration of Monique Patzer (hereinafter "Patzer"), ¶4.

32.        Ms. Tavares had sufficient income to qualify for an FHA HAMP modification with a partial claim. Patzer, ¶7.

33.        ServiSolution's exclusion of her child-support income disqualified Ms. Tavares' from a loan modification, not a lack of income. Patzer, ¶8.

34.        Again, on September 6, 2017, Ms. Tavares' housing counselors submitted to ServiSolutions another complete modification application on her behalf. Patzer, ¶9.

35.        Despite Ms. Tavares' income being sufficient to cover the monthly obligation of a modified mortgage pursuant to the applicable guidelines and still have an estimated monthly surplus of $1,400, ServiSolutions denied the application in its letter dated . Patzer, ¶9

36.        Ms. Tavares' housing counselor appealed ServiSolution's denial because it failed to provide any of the net present value (NPV) figures it used to support its determination that Ms. Tavares did not qualify for any modification program. Patzer, ¶9, Ortiz C.

37.        Using Ms. Tavare's accurate income and expense data, the FDIC Net Present Value calculation varified Ms. Tavares' "Pass." Accordingly Ms. Tavares is an elgible candidate for a mortgage loan modification.  Patzer, ¶10, Ortiz C.

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 6

38.         ServiSolution's denial of Mr. Tavares' modification application withholds the

numbers that would make it possible to understand the truth and efficacy of its October 3, 2017

denial and it has no evidence of the application of a partial claim. Patzer,¶11, Tavares, ¶16.

39.         ServiSolutions first refused to include child-support in Ms. Tavares' income. When

it agreed to use child-support, making the modification affordable, it then denied Ms. Tavares the

loan modification based on the lack of a complete application from Ms. Anzaldua, but by then

ServiSolutions had advised Ms. Tavares that Mr. Anzladua's signed quitclaim deed would not be

helpful, so she did not obtain one. Patzer, ¶12, Tavares, ¶14.

40.         Ms. Tavares gross monthly income is $5,346.00 and her expenses are listed at

$1,700.00 per month.  Based on this information, she would qualify for an FHA-HAMP

modification with a Partial Claim. Patzer, ¶13.

41.         ServiSolution's delay in accurately assessing Ms. Tavares' affordability for a loan

modification has and will certainly increase the cost of the loan simply by the passage of time

and the application of the monthly interest rate. Patzer,¶14.

42.         Ms. Tavares' home is scheduled for trustee sale on November 14, 2017. Ms.

Tavares fears unnecessary and imminent loss of her family's home.


## IV.    CLAIMS

### FIRST CLAIM

**AGAINST DEFENDANT SERVISOLUTIONS FOR DAMAGES
ARISING FROM WASHINGTON CONSUMER PROTECTION ACT
VIOLATIONS UNDER RCW 19.86 (CPA)**

43.         Plaintiff realleges paragraphs 15 to 42.

44.         Acting as alleged herein, ServiSolutions violated the Washington Consumer

Protection Act (*hereinafter* "CPA"). The Washington Consumer Protection Act is codified in RCW

19.86. In order to make a claim under the CPA, Plaintiff must show: (1.) an unfair or deceptive

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 7

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

1

2

act or practice; (2.) occurring in trade or commerce; (3.) that impacts the public interest; (4.)

causes injury to the Plaintiffs' business or property; and (5.) causation. *Hangman Ridge Training*

3

*Stables v. Safeco Title Ins. Co,* 105 Wn.2d 778, 780 (1986).

4

5

**(1.) an unfair or deceptive act or practice; (2.) occurring in trade or commerce**;

6

45.        For the eighteen months since April 2016, ServiSolution squandered ample

opportunity to resolve Ms. Tavares foreclosure. Ms. Tavares' applications for a modification were

7

never fully reviewed because ServiSolutions excluded from her income calculation monthly

8

child-support payments that she was receiving without fail. Patzer ¶6. Ortiz, Ex D.

9

46.        ServiSolution's failure to timely use its partial claim against FHA's Mutual

10

Mortgage Insurance Fund and failing to apply the proceeds of FHA's lien to cure the default,

11

amounts to a "bait and switch," because the financial product plaintiff negotiated and paid for

12

could have reinstated this loan prior to the unpaid principal bloating over the past eighteen

13

months. Thee is no evidence of the application of a partial claim and this was an FHA loan. *See*

14

Patzer at ¶11. In effect, Ms. Tavares ended up with an uninsured mortgage even though she and

15

Mr. Anzaldua had been paying for an FHA insured loan. ServiSolution's October 3, 2017 denial

16

mentions the parameters of HAMP Standalone modifications with and without partial claims, but

17

does not show how those parameters would apply to Ms. Tavares' income, whereas Ms.

18

Tavares' housing counselor used the FDIC Net Present Value calculation to verify that Ms.

19

Tavares was in fact an eligible candidate for a mortgage loan modification. Patzer ¶10.

20

47.        Ms. Tavares also had to deal with ServiSolution's conflicting directives regarding

21

obtaining a quitclaim deed signed by the co-borrower Ms. Anzaldua.[3]  Upon default, around June

22

23

3  FHA's guidelines governing loss mitigation clearly states,

24

> "The Mortgagee must ensure that the selected workout strategy reflects the Borrower's ability to pay. The Mortgagee must require Borrowers who want to retain the Property and who have sufficient surplus income and/or other assets to reinstate the Mortgage through a repayment strategy."

25

26

**COMPLAINT FOR INJUNCTION**
**AND DAMAGES**
Page - 8

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704        arthur@aeolegal.com

28

of 2016, Ms. Tavares contacted ServiSolutions for information on applying for a loan modification. ServiSolutions informed her that Edward Anzaldua would also be required to apply. When Ms. Tavares explained to ServiSolutions that Mr. Anzaldua no longer lived at the house and needed to qualify on her own, ServiSolutions told her that if she did not want his income included, she would have to have him sign a quitclaim deed. Tavares ¶12. After discharging her unsecured debt in bankruptcy, improving modification affordability, Ms. Tavares again approached ServiSolutions in May 2017 and ServiSolutions told her a quitclaim deed would not help. Nevertheless, ServiSolutions still denies Ms. Tavares a loan modification by insisting Mr. Anzaldua's provide a full application instead of just counting the child-support he pays as part of Ms. Tavares' income. In other words, contrary to ServiSolution's representation to Ms. Tavares in May 2017, a quitclaim would appear to help. *See fn* 3.

48.        When Ms. Tavares contacted ServiSolutions to retrieve the documents that her housing counselors requested of her, someone at ServiSolutions tried to talk her out of using housing counselors to help her assemble her modification application packet. ServiSolutions told her it would be much easier without the "middleman." Tavares, ¶13.

49.        The CPA broadly defined the terms "trade" and "commerce" to include "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). Plaintiff, Ms. Tavares, alleges her mortgage is part of a sale and is secured by her residential property thus affecting her directly.

### (3.) that impacts the public interest;

50.        Under RCW 19.86.093 a plaintiff may establish that the alleged acts or practices are injurious to the public interest when they violate statutes that contain specific legislative

FHA Single Family Housing Policy Handbook, No. 4000.1, December 30, 2016, pg. 600. the FHA manual also includes Child Support in the definition of Continuous Income, that is, income likely to continue through at least the next twelve months. Id. at pg. 601. *See* Ortiz Ex. D. Ms. Tavares actually met the requirements for Eligibility laid out on pages 619, 626-627 of the SFH Policy Manual. *See also* Patzer ¶¶10-13.

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 9

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704    arthur@aeolegal.com

declarations of public interest impact. RCW 19.86.093(1) & (2). ServiSolution's acts thwart the three main policies of the Washington's Deeds of Trusts Act: (1) '"the nonjudicial foreclosure process should remain efficient and inexpensive, '" (2) '"the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure, '" and (3) '"the process should promote the stability of land titles." *Bain v. Metro. Mortg. Grp., Inc.,*175 Wn.2d 83, 93, 285 P.3d 34 (2012).[4] ServiSolutions delay and refusal to count Ms. Tavares' qualifying income is an inefficiency making Ms. Tavares' loan more expensive. ServiSolutions is squandering any opportunity for the parties to prevent wrongful foreclosure, and ServiSolutions destabilizes Ms. Tavares' title to the house she could afford but for ServiSolution's unreasonable and selective loan servicing.

There is no serious question ServiSolution's actions have a public impact. Under RCW 19.86.093(3) ServiSolutions had and has the capacity to injure others. In thecontext of a home loan mortgage sold and serviced by an entity who sells and services loans to hundreds, if not thousands of people, in multiple States, there is no question ServiSolution's acts have the substantial potential for repetition and affect the public interest. ServiSolutions boasts being the largest mortgage loan servicer in Alabama. In addition to the loans funded by AHFA, ServiSolutions services loans for housing finance agencies in Mississippi, Missouri, North Carolina and Washington. *See* http://www.ahfa.com/about.

### (4.) injury to the Plaintiffs' business or property;

51.        ServiSolution's bad faith is injuring plaintiff in the form of a more expensive mortgage. Patzer ¶14. ServiSolutions's own monthly mortgage statements show that as of October 16, 2017, Ms. Tavares total outstanding balance is $60,153.71 and her unpaid principal balance is $299, 738.12 only $9,555.88 less than what was borrowed forty-three months ago.

---

4        When the Foreclosure Fairness Act (FFA) amended Washington's Deeds of Trust Act (DTA) the substitute house bill described the amendment as an act relating to "protecting and assisting homeowners from unnecessary foreclosure…." 2011 SHB 1363, Chpt. 58, 62nd Legis.

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 10

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON  98136
TEL 206-898-5704        arthur@aeolegal.com

Ortiz Ex. E. The bloated arrears increases the time it will take to pay back the loan, thereby increasing what Ms. Tavares will pay in interest and fees over the life of the loan.Where a more favorable loan modification was available but for bad faith, the borrower may have suffered an injury to property within the meaning of the CPA. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431-32, 334 P.3d 529, 538. (2014).  A plaintiff may be injured by conduct which causes increased principal and accrued interest.*U.S. Bank N.A. v. Tait*, 2016 U.S. Dist. LEXIS 129046 (W.D.Wash. Sep. 21, 2016).

52.        **(5.) causation**; Had ServiSolutions permitted Ms. Tavares to participate in the HAMP program, as of June 2016 by offering her a loan modification, her income was sufficient to qualify and sustain a loan payment as of that date.Patzer ¶¶5-7. But for ServiSolution's actions as alleged herein, the increased principal and accrued interest injury would not have occurred. In failing to address the issues of foreclosure, defendant ServiSolutions created an outstanding principle balance far larger than it would have been had defendants simply complied with the law. Patzer ¶14, Ortiz Ex. E.

## PRAYER FOR RELIEF AS TO SERVISOLUTION'S CPA VIOLATIONS

53.        As a result of ServiSolution's CPA violations, plaintiffs suffered the threat of losing their home, the added expense of attorneys fees and costs, as well as the bloated unpaid principal balance. Plaintiffs' interest in the property is severely diminished due to the bloated principal, and the added interest expense that additional principal continues to generate.

54.        **WHEREFORE**, it is respectfully prayed that this Court:

ORDER defendant, ServiSolutions, to pay plaintiff compensation pursuant the following. Actual damages in the form of the additional loan cost, lost incentive payments, any recoupment or set-off, the capped treble damages under RCW 19.86.090 of $25,000.00, and attorney fees and cost to be determined by the court, and any other actual cost or damage incurred as a result

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 11

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704       arthur@aeolegal.com

of ServiSolutions's deceptive delay. The financial injury related to the growing principal are on-going and increasing. Ms. Tavares' equity position has been permanently and negatively impacted. Because of the lack of a loan modification in this case, and the impact that time has on interest accrual and subsequently capitalized principal, the total loss of the loan payment difference over the loan's remaining term as compared to a HAMP Modified loan is substantial and must be determined at trial to avoid speculation here.

## SECOND CLAIM

### AGAINST SERVISOLUTIONS FOR DAMAGES ARISING FROM VIOLATIONS OF THE MS. TAVARES' CIVIL RIGHTS.

## COUNT I

55.    Plaintiff realleges paragraphs 15 to 42.

56.    42 U.S.C. §2000d states, "[N]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

57.    Ms. Tavares is half Filipina and has a Hispanic surname.

58.    The U.S. Department of Treasury's (Treasury) Home Affordable Modification Program (HAMP) was designed to help financially struggling homeowners avoid foreclosure by modifying loans to a level that is affordable and sustainable over the long term.

59.    Ms. Tavares qualified for a loan modification under HAMP. Patzer¶7.

60.    Ms. Tavares asked ServiSolutions about applying for a loan modification a number of times with no substantive response or result. Tavares ¶¶11-12, 14.

61.    The HAMP Program terminated effective December 31, 2016. §709(b), Consolidated Appropriations Act, 2016, P.L. 114-113, 129 STAT. 3030.

**COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 12

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

62.          Acting as alleged herein, by delaying legitimate review of Ms. Tavares'

modification applications ServiSolutions effectively excluded plaintiffs from participation in, and

denied the benefits of their options under MHA, because of her race, color, or national origin.

63.     As a result, Ms. Tavares suffered loss of their rights under the MHA Program as well as

financial loss in the form of increased loan costs. Ms. Tavares suffered emotional distress,

mental anguish, and humiliation. These damages are continuing.

64.          **WHEREFORE,** plaintiffs request that the court enter judgment in their favor and

against ServiSolutions for $500,000.00 in emotional distress damages for the 43 months of grief,

shame, and intense anxiety caused by ServiSolution's stubborn refusal to avoid unnecessarily

foreclosing on Ms. Tavares and her six minor children.


## COUNT II

65.     Plaintiff realleges paragraphs 15 to 42.

66.          42 U.S.C. §2000d states, "[N]o person in the United States shall, on the ground of

race, color, or national origin, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance."

67.          Ms. Tavares is half Filipina and has a Hispanic surname.

68.          The Federal Housing Administration's (FHA) insurance programs are HUD's main

vehicle for making financing available to otherwise ineligible borrowers. From the beginning,

plaintiff's loan was an FHA insured loan. By information and belief, in all likelihood, Ms. Tavares

along with Mr. Anzaldua were given certain assurances, through their original loan

documentation, that the mortgage insurance being paid for was a "protection" for their loan.

Approved lenders who finance borrowers are guaranteed reimbursement from FHA in the event

the borrower defaults. HUD's Partial Payment of Claim, or partial claim program, involves paying

the lender on behalf of the borrower to prevent foreclosure.

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 13

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

69.        There is no evidence that ServiSolutions applied for a partial claim in the eighteen

months Ms. Tavares struggled to get her loan current with a modification. Patzer,¶11.

70.        Ms. Tavares qualified for an FHA-HAMP modification with a partial claim. Patzer,

¶13.

71.        Acting as alleged herein, by withholding application of a partial claim,

ServiSolution effectively excluded Ms. Tavares from participation in, and denied the benefits of

FHA's mortgage insurance program, because of her race, color, or national origin.

72.        As a result, Ms. Tavares suffered loss of her rights under the MHA Program as

well as financial loss in the form of increased loan costs. Plaintiffs suffered emotional distress,

mental anguish, and humiliation. These damages are continuing.

73.        **WHEREFORE,** plaintiffs request that the court enter judgment in their favor and

against ServiSolutions for $500,000.00 in emotional distress damages for the 43 months of grief,

shame, and intense anxiety caused by ServiSolution's stubborn refusal to avoid unnecessarily

foreclosing on Ms. Tavares and her six minor children.

### THIRD CLAIM

**AGAINST SERVISOLUTIONS FOR DAMAGES ARISING
FROM VIOLATIONS OF 15 U.S.C. § 1691(d)(1) OF THE
EQUAL CREDIT OPPORTUNITY ACT (ECOA).**

74.        Plaintiff realleges paragraphs 15 to 42.

75.        15 U.S.C. §1691(d)(1) is not limited to adverse actions, and applies generally to

"completed application[s] for credit." *See McMahon v. JPMorgan Chase Bank, N.A*,16-1459-

JAM-KJN (U.S. Dist. Ct. E.D. Cal., May 30, 2017) (refusing to dismiss §1691(d)(1) claim).

Pursuant to §1691(d)(1), within thirty days of receipt of a credit application, which includes a

loan modification application, a creditor must notify the applicant of the action taken on the

application. That is, the creditor must either approve or deny the application within thirty days.

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 14

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

76.        Ms. Tavares submitted a complete modification application to ServiSolutions on June 15, 2017 through a housing counselor. A response was never received. Patzer¶4.

77.        In the eighteen months since default, Ms. Tavares reached out to ServiSolutions and submitted a number of loan modification applications without one substantive response. Patzer ¶¶4,9, Tavares ¶¶11-12, 14. None of ServiSolution's contacts related to approval or a counteroffer. All of ServiSolution's communication were in the nature of conflicting direction as to requiring a quitclaim deed or not from Mr. Anzaldua, selective exclusion of child support or inclusion of Mr. Anzaldua's income always with the result of disqualifying Mr. Tavares while having sufficient qualifying income.

78.        ServiSolution's failure to notify the Ms. Tavares about approval or counteroffer within thirty days of receiving her loan modification application constitutes a violation of section 1691(d)(1) of the Equal Credit Opportunity Act, regardless of Plaintiffs' default status. Because this section does not specify whether the action taken be adverse or favorable, the exception for borrowers in default in (d)(6) is not applicable to the thirty-day requirement in (d)(1), as it is in (d) (2).

## PRAYER FOR RELIEF AS TO SERVISOLUTION'S
## 15 U.S.C. §1691(d)(1) VIOLATIONS

79.        Pursuant to 15 U.S.C. §1691e(a)-(d) and as a result of SeriSolution's ECOA violations, plaintiffs are entitled to actual damages including, but not limited to, loss of money and property, losses through overcharges, incurred attorneys' fees and costs to save their home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court. ServiSolutions consciously disregarded plaintiffs' rights, deliberately breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 15

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704        arthur@aeolegal.com

1

2
the imposition of punitive damages. Ms. Tavares also requests the imposition of punitive

damages for ServiSolution's demonstrable bad faith.

3

4
**FOURTH CLAIM**

5
**AGAINST SERVISOLUTIONS FOR DAMAGES
ARISING FROM THE TORT OF OUTRAGE.**

6

7
80.        Plaintiff realleges paragraphs 15 to 42.

8
81.        Acting as alleged herein, ServiSolution's outrageous conduct injured plaintiffs.

9
The elements of the tort of outrage are "(1) extreme and outrageous conduct, (2) intentional or

10
reckless infliction of emotional distress, and (3) severe emotional distress on the part of plaintiff."

11
*Rice v. Janovich*, 109 Wn.2d 48, 61 (1987).

12
82.         Ms. Tavares was strung along for eighteen months. For the same reasons the

13
facts show deception sufficient to establish a CPA claim above, such deception also goes to the

14
intolerable character and degree of ServiSolution's conduct. ServiSolutions put Ms. Tavares

15
through an unconscionable process of circular, false, and conflicting document demands. See

16
Patzer ¶¶4,9, Tavares ¶¶11-12, 14, and Ortiz Ex. C.

17
83.        For over esighteen months now, Ms. Tavares has felt the real threat of losing her

18
home in foreclosure while qualifying for a modified mortgage. This comes with the particularly

19
acute anxiety associated with the risk of losing not just one's home but that of one's six minor

20
children.

21
84.        The outrage at ServiSolution's actions magnifies when considered against the

22
inevitable consequence that the minor sexual assault victim will be needlessly uprooted by an

23
unnecessary foreclosure, a foreclosure induced by ServiSolution's misdirection as to whether a

24
quitclaim deed (ostensibly signed by the man who sexually assaulted the minor) was necessary

25

26
**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 16

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

28

fto obtain a modification. The message sent to the minor victim here is as repugnant as it is

unsubtle, report sexual assault and lose your home.

85.        **WHEREFORE,** plaintiffs request that the court enter judgment in their favor and

against ServiSolutions for $500,000.00 in emotional distress damages for the eighteen months

of grief, shame, and the extreme anxiety caused by ServiSolutions refusal to properly address

Ms. Tavares' loan modification application.

### FIFTH CLAIM

### AGAINST SERVISOLUTIONS FOR DAMAGES ARISING FROM VIOLATIONS OF THE FAIR HOUSING ACT (FHA).

86.        Plaintiff realleges paragraphs 15 to 42.

87.        42 U.S.C. §3604 *et seq* states it shall be unlawful to refuse to negotiate or

otherwise make unavailable or deny a dwelling to any person because of race, color, religion or

national origin.

88.         Ms. Tavares is half Filipina and has a Hispanic surname, thus a member of a

protected class.

89.        Ms. Tavares engaged a trained and experienced housing counselor to assist her

in addressing the issues of foreclosure.

90.        When Ms. Tavares contacted ServiSolutions to retrieve the documents that her

housing counselors requested, someone at ServiSolutions tried talking Ms. Tavares out of using

housing counselors. They told her it would be much easier without the "middleman." Tavares

¶13.

91.        ServiSolutions also gave Ms. Tavares conflicting information as to their

requirement for a quitclaim deed. ServiSolution's initial communication to Ms. Tavares in June

2016 appear to align with MHA policy. However, after Ms. Tavares discharged the unsecured

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 17

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

debt left her by the departed Mr. Anzaldua, ServiSolutions "switched the bait" and stated a

signed quitclaim deed would not be helpful.

92.       For eighteen months ServiSolutions evaded and squandered any and all

opportunity to negotiate a resolution of Ms. Tavares' issues in foreclosure.

93.    As a result, Ms. Tavares suffered loss of her rights under programs such as MHA and

FHA insurance, and is suffering increased loan costs. Ms. Tavares is suffering the anxiety,

stress, emotional distress, mental anguish, humiliation, and shame brought about by

ServiSolution's unnecessary foreclosure. These damages are continuing.

94.       **WHEREFORE,** plaintiffs request that the court enter judgment in their favor and

against ServiSolutions for $500,000.00 in emotional distress damages for the eighteen months

of grief, shame, and distress caused by ServiSolution's bad faith.


## V.     RELIEF

95.    Plaintiffs demands relief as follows:

95.1       Judgment against defendants for the damages described in the Complaint

and for all damages available under the Deed of Trust, RCW 4.84.330, RCW RCW 61.24,

RCW 19.86, RCW 19.16.250, RCW 19.148.030, *et seq.* and common law, including treble

damages, attorneys fees and costs, and the increased debt balance measured by the

present value of the difference between the monthly payments of a modification under

current circumstances and the monthly payments of a modification plaintiffs would be paying

but for the evasive and deceptive delay alleged above;

95.2       An award of costs of this action and reasonable attorneys' fees under 12

U.S.C. § 2605(f)(1);

95.3       An award of damages for emotional distress against ServiSolutions for

$2,000,000.00, and any additional amount proven at trial;

**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 18

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

95.4      An award of damages under 15 U.S.C. § 1640(a)(4), for actual damages,

an amount equal to the sum of all finance charges and fees paid by plaintiffs, and costs

including attorney fees;

95.5      An award of actual damages, punitive damages, and attorneys' fees under

15 U.S.C. § 1681n.  and 15 U.S.C. §1691e(a)-(d).

95.6      Injunctive relief halting the trustee scheduled for November 17, 2017 ;

95.7      An award for the value of lost use of plaintiff's monies, past and future,

according to proof at time of trial;

95.8      An award to plaintiffs for prejudgment interest as available by law;

95.9      Judgment against defendant for plaintiffs' costs, including reasonable

attorney's fees as available; and

95.10     Such other relief as this Court deems just and equitable.


Dated this 27th day of October, 2017.


_____
Arthur E. Ortiz, WSBA No. 26676
Attorney for Plaintiff


**COMPLAINT FOR INJUNCTION
AND DAMAGES**
Page - 19

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON  98136
TEL 206-898-5704      arthur@aeolegal.com

1

2

3

4

VERIFICATION

5

6 <u>Christine Tavares</u>, declares, UNDER PENALTY OF PERJURY, under the laws of the State of Washington, that the following is true and correct; he is a Plaintiff in the foregoing action; he has reviewed the foregoing Complaint For Damages, knows the contents thereof, and believes the same to be true.

7

8

9          Dated at Mt. Vernon, Washington, this 26th day of October, 2017.

10

11          _____

Christine Tavares

12          Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26 **COMPLAINT FOR INJUNCTION AND DAMAGES**
Page - 20

ARTHUR E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., No. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

28