Arthur E. Ortiz, WSBA No. 26676
Email: arthur@aeolegal.com
The Law Office of Arthur E. Ortiz
6015 California Ave. S.W., No. 203
Seattle, WA 98136
Tel.: (206) 898-5704

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINE TAVARES,<br><br>Plaintiff,<br><br>vs.<br><br>ALABAMA HOUSING FINANCE AUTHORITY, a foreign public corporation doing business in Washington as SERVISOLUTIONS<br><br>Defendant. | No.<br><br>LCR 65(b) MOTION SEEKING INJUNCTIVE RELIEF RESTRAINING THE FORECLOSURE SALE OF PROPERTY AT 4704 MOUNT BAKER LOOP, MOUNT VERNON, WA 98273<br><br>CLERK'S ACTION REQUIRED<br><br>NOTE FOR MOTION CALENDAR:<br><br>October 27, 2017 |

I.   RELIEF REQUESTED

COMES NOW PLAINTIFF, CHRISTINE TAVARES, through her ATTORNEY, ARTHUR

ORTIZ and requests the Court grant a RESTRAINING ORDER, halting the nonjudicial

foreclosure sale of her property and principal dwelling on 4704 Mount Baker Loop, Mount

Vernon, WA 98273. The foreclosure sale was rescheduled for Friday, November, 17, 2017.

This Motion is made pursuant to the applicable laws of Washington, including the Deeds of

Trust Act, RCW 61.24.130(2), CR 65, and meets with the required notice being properly

served under the requirements of this law.

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF
RESTRAINING FORECLOSURE SALE**
Page - 1

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704       arthur@aeolegal.com

## II.   STATEMENT OF FACTS

By reference this Motion incorporates paragraphs 15 to 42 of the COMPLAINT FOR INJUNCTIVE RELIEF ORDERING THE PERMANENT RESTRAINT OF THE FORECLOSURE SALE AND FOR RECOVERY OF DAMAGES filed on October 27, 2017. Also, this motion makes reference to the same declarations and exhibits attached to the complaint. A fact summary is provided below.

Plaintiff, Ms. Tavares, together with her then domestic partner, Mr. Anzaldua, purchased their home by entering into a mortgage secured by the real property on or around March 24, 2014. Mr. Anzaldua is also the biological father of three of Ms. Tavares' six minor children. All of Ms. Tavares' children reside in the subject property. On Thanksgiving of 2015, it was discovered that Mr. Anzaldua sexually assaulted Ms. Tavares' oldest minor daughter, then fifteen. By November 30, 2015 a sealed no-contact order in Skagit County Superior court protected Ms. Tavares daughter from further contact. Mr. Anzaldua, now living elsewhere, resumed making the monthly mortgage payments until a sudden increase in the monthly mortgage payment caused him to reduce his payments to Ms. Tavares to a monthly child support payment of $1,000.00. This reduction along with the credit card debt left in Ms. Tavares' name, lead Ms. Tavares to seek loan modification assistance from ServiSolutions. After defaulting around April of 2016. It was Ms. Tavares' desire to obtain a loan modification using her income and the child support from Mr. Anzaldua. ServiSolutions initially refused to include the child support payments and informed Ms. Tavares that she would need a quitclaim deed if she wanted only her income counted in determining affordability for a modification.

After discharging the unsecured debt left to her in bankruptcy, Ms. Tavares again attempted to modify her loan with ServiSolutions. This time, ServiSolutions relented with regard to child support inclusion in the calculation Ms. Tavares income, thereby qualifying her for a loan, but it refused to modify the loan without using Mr. Anzaldua's income. At this point ServiSolutions contravened its earlier representation informing Ms. Tavares that a quitclaim

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 2

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

deed would not be helpful. ServiSolutions also attempted to persuade Ms. Tavares to not use her HUD approved housing counseling agency stating applying for a modification was easier without the "middleman." Tavares ¶14.

This is an unnecessary foreclosure. Ms. Tavares proved continuous child support income from Mr. Anzaldua and met all the requirements found in FHA's Single Family Housing Policy Manual for qualifying for an FHA modification with a partial claim. Yet there is no evidence of ServiSolution's application to FHA for a partial claim. Patzer ¶11.

ServiSolutions shifted their position from refusing to count child support as part of Ms. Tavares' income and requiring a signed quick claim deed from Mr. Anzaldua, to not requiring a signed quitclaim deed from Mr. Anzaldua and including child support in calculating Ms. Tavares' income, but ultimately refusing modification based on the lack of an application from Mr. Anzaldua. This bait-and-switch pattern has lasted eighteen months and delayed resolution of Ms. Tavares' default past the expiration of the federal Making Home Affordable HAMP program. Regardless of Ms. Tavares' ability to afford a loan modification on her own, ServiSolutions is proceeding to foreclosure sale November 17, 2017, only six days prior to Thanksgiving, which is also the two-year anniversary of the sexual assault that precipitated the need for loss mitigation assistance.

### III.        STATEMENT OF THE ISSUES

1.      Whether Plaintiff is likely to succeed on the merits of her claims?

2.      Whether Plaintiffs is likely to suffer irreparable loss absent injunction?

3.      Whether in this instance injunction is in the public interest?

### IV.    EVIDENCE RELIED UPON

1.      The Court's records and the files therein.

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 3

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

## V.    AUTHORITY

The standard for granting a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) Plaintiffs seeking injunctive relief must establish a likelihood of success on the merits, irreparable harm in the absence of preliminary relief, that such relief provides a favorable tip in the balance of equities, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A "preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," provided the plaintiff also demonstrates irreparable harm and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The Deeds of Trust Act ("DTA"), governs the procedures and requisites for nonjudicial foreclosures in Washington. *Cox v. Helenius*, 103 Wn.2d 383, 388 (1985); *see also Yawter v. Quality Loan Serv. Corp. of Wash.*, 707 F.Supp.2d 1115, 1121 (W.D. Wash. 2010). "The sole method to contest and enjoin a foreclosure sale is to file an action to enjoin or restrain the sale in accordance with RCW 61.24.130." *CHD, Inc. v. Boyles*, 138 Wn.App. 131, 137 (2007). The Act must be construed in favor of borrowers because of the relative ease with which lenders can forfeit borrowers' interests and the lack of judicial oversight in conducting nonjudicial foreclosure sales. *Schroeder v. Excelsior Management Group, LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013). A court can set aside the sale if it would be inequitable under the circumstances and inconsistent with the goals of the DTA to apply waiver instead. *Albice v. Premier Mortgage Services of Washington, Inc.*, 174 Wn.2d 560, 568, 276 P.3d 1277 (2012).

Under the DTA, "[t]he court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed." RCW 61.24.130(1). However, Courts can fashion a just remedy, especially if there is the possibility

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 4

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

of wrong doing. *See Bowcutt v. North Star*, 95 Wn.App. 311, 976 P.2d 643 (1999), *citing*

Washington Constitution Article 4, § 6. *See also Blanchard v. Golden Age Brewing Co.*, 188

Wn. App 396 (1936). The DTA's payment requirement protects good faith lenders, not

predators. *Bowcutt*, 95 Wn.App. at 321.

## VI.   ARGUMENT

### A.      Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

Plaintiffs' complaint includes claims for violations of Washington's Consumer Protection

Act ("CPA"), Ms. Tavares' civil rights under 42 U.S.C. §2000d, the Equal Credit Opportunity

Act ("ECOA"), the Fair Housing Act under 42 U.S.C. §3604 *et seq.*, and for damages arising

from the Tort of Outrage.

#### 1.      The CPA

Plaintiffs' are likely to prevail in their CPA claims because PCB's (1) unfair and deceptive

acts and practices; (2) occurred in trade or commerce; (3) impacts the public interest; (4)

injured plaintiffs in their business and property; and (5) PCB caused that injury to plaintiffs'

business and property. *Hangman Ridge Training Stables v. Safeco Title Ins. Co,* 105 Wn.2d

778, 780 (1986).

##### a.      Unfair and Deceptive Acts or Practices Occurring in
##### Trade or Commerce.

As for the requirement that events occur in trade or commerce, the CPA broadly defined

the terms "trade" and "commerce" to include "the sale of assets or services, and any

commerce directly or indirectly affecting the people of the state of Washington." RCW

19.86.010(2). Plaintiff, Ms. Tavares, alleges her mortgage is part of a sale and is secured by

her residential property thus affecting her directly.

Ms. Tavares can also show ServiSolutions deceptively evaded default loss mitigation by

moving the target for qualifying for a loan modification. First ServiSolutions stated it would not

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 5

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

count child support, prompting Ms. Tavares to seek discharge of her unsecured debt in bankruptcy to improve her debt to income ratio, and it would require a signed quitclaim deed from Mr. Anzaldua. After discharging the unsecured credit card debt left after Mr. Anzaldua's departure, ServiSolution's position changed to one of including child support in calculating Ms. Tavares' income thereby qualifying her for a modification, but then refusing to modify the loan for lack of Mr. Anzaldua's modification application. ServiSolutions never revealed how it is arriving at its determination that Ms. Tavares is unable to afford an FHA HAMP modification in the face of overwhelming data and analysis to the contrary. Patzer ¶¶ 11-16.

b.      Public Impact.

Under RCW 19.86.093(3) ServiSolutions had and has the capacity to injure others. In the context of a home loan mortgage sold and serviced by an entity who sells and services loans to hundreds, if not thousands of people, in multiple States, there is no question ServiSolution's acts have the substantial potential for repetition and affect the public interest. ServiSolutions boasts being the largest mortgage loan servicer in Alabama. In addition to the loans funded by AHFA, ServiSolutions services loans for housing fi□nance agencies in Mississippi, Missouri, North Carolina and Washington. *See* http://www.ahfa.com/about.

Moreover, ServiSolutions conduct with regard to Ms. Tavares' efforts to modify her mortgage makes a mockery of the DTA's purpose of making the non-judicial foreclosure process that, (1)  is efficient and inexpensive,  (2)  provides an adequate opportunity for interested parties to prevent wrongful foreclosure,  and (3) promotes stability of land titles." *Bain v. Metro. Mortg. Grp., Inc.,* 175 Wn.2d 83, 93, 285 P.3d 34 (2012). A fruitless eighteen month effort cannot be said to promote an efficient, reasonable, process for stabilizing title. Similarly, there is no evidence ServiSolutions ever applied the partial claim mortgage insurance and despite her ability to afford a modification with a partial claim , ServiSolutions defiantly and needlessly proceeds to foreclosure sale.

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

c.      Injury to Business and Property

ServiSolution's bad faith is injuring plaintiff in the form of a more expensive mortgage. Patzer ¶14. ServiSolutions's own monthly mortgage statements show that as of October 16, 2017, Ms. Tavares total outstanding balance is $60,153.71 and her unpaid principal balance is $299,738.12 only $9,555.88 less than what was borrowed forty-three months ago. Ortiz Ex. E. The bloated arrears increases the time it will take to pay back the loan, thereby increasing what Ms. Tavares will pay in interest and fees over the life of the loan. Where a more favorable loan modification was available but for bad faith, the borrower may have suffered an injury to property within the meaning of the CPA. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431-32, 334 P.3d 529, 538. (2014).  A plaintiff may be injured by conduct which causes increased principal and accrued interest. *U.S. Bank N.A. v. Tait*, 2016 U.S. Dist. LEXIS 129046 (W.D.Wash. Sep. 21, 2016).

d.      Causation

Had ServiSolutions permitted Ms. Tavares to participate in the HAMP program, as of June 2016, her income was sufficient to qualify and sustain a loan payment as of that date. Patzer ¶¶5-7. But for ServiSolution's actions as alleged herein, the increased principal and accrued interest injury would not have occurred. In failing to address the issues of foreclosure, defendant ServiSolutions created an outstanding principle balance far larger than it would have been had defendants simply complied with the law. Patzer ¶14, Ortiz Ex. E.

2.      Violations of Ms. Tavares' Civil Rights

42 U.S.C. §2000d states, "[N]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Ms. Tavares is half Filipina and has a Hispanic surname. Ms. Tavares qualified for a loan modification under HAMP. Patzer ¶7. Ms. Tavares asked ServiSolutions about

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 7

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

applying for a loan modification a number of times with no substantive response or result.

Tavares ¶¶11-12, 14. The HAMP Program terminated effective December 31, 2016. §709(b),

Consolidated Appropriations Act, 2016, P.L. 114-113, 129 STAT. 3030. Aside from the

apparent withholding of a foreclosure-avoiding partial claim, ServiSolutions managed to delay

servicing Ms. Tavares' modification application long enough to reach beyond HAMP's

expiration thus depricing Ms. Tavares of its benefits. *See* Complaint, Counts I & II at 12-13.

### 3.      Equal Credit Opportunity Act (ECOA)

15 U.S.C. §1691(d)(1) applies generally to "completed application[s] for credit." *See*

*McMahon v. JPMorgan Chase Bank, N.A*.,16-1459-JAM-KJN (U.S. Dist. Ct. E.D. Cal., May

30, 2017) (refusing to dismiss §1691(d)(1) claim). Pursuant to §1691(d)(1), within thirty days

of receipt of a credit application, which includes a loan modification application, a creditor

must notify the applicant of the action taken on the application. That is, the creditor must

either approve or deny the application within thirty days.

Ms. Tavares submitted a complete modification application to ServiSolutions on June 15,

2017 through a housing counselor. A response was never received. Patzer ¶4. In the eighteen

months since default, Ms. Tavares reached out to ServiSolutions and submitted a number of

loan modification applications without one substantive response. Patzer ¶¶4,9, Tavares ¶¶11-

12, 14. None of ServiSolution's contacts related to approval or a counteroffer. All of

ServiSolution's communication were in the nature of conflicting direction as to requiring a

quitclaim deed or not from Mr. Anzaldua, selective exclusion of child support or inclusion of

Mr. Anzaldua's income always with the result of disqualifying Mr. Tavares while having

sufficient qualifying income.

ServiSolution's failure to notify the Ms. Tavares about approval or counteroffer within thirty

days of receiving her loan modification application constitutes a violation of section 1691(d)(1)

of the Equal Credit Opportunity Act, regardless of Plaintiffs' default status. Because this

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF
RESTRAINING FORECLOSURE SALE**
Page - 8

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

1

2

section does not specify whether the action taken be adverse or favorable, the exception for

borrowers in default in (d)(6) is not applicable to the thirty-day requirement in (d)(1), as it is in

3

(d)(2).

4

5

                    4.          The Tort of Outrage and the Unconscionable Process

6

In the face of a family dealing with a sexual assault of a minor and a working mother's

7

income sufficient to qualify for a modification, ServiSolution just would not bring itself to

develop a workout reflecting Ms. Tavares' ability to pay. FHA's guidelines governing loss

8

mitigation clearly state,

9

> The Mortgagee must require Borrowers who want to retain the Property and who
> have sufficient surplus income and/or other assets to reinstate the Mortgage
> through a repayment strategy.

10

11

FHA Single Family Housing Policy Handbook, No. 4000.1, December 30, 2016, pg. 600. The

12

tort of outrage requires (1) extreme and outrageous conduct, (2) intentional or reckless

13

infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.

14

*Montgomery et al v. SOMA Financial Corp. et al*, C13-360 RAJ, ECF 40, pg.14, (W.D. Wash.,

15

May 19, 2014) *citing Kloepfel v. Bokor,* 149 Wn.2d 192, 195 (2003)(the court in *Montgomery*

16

refused to grant BANA's motion to dismiss because of the allegation that BANA induced the

17

default and then attempted to foreclose plausibly alleged extreme or outrageous conduct.)

18

The question of whether the defendant's conduct is sufficiently outrageous is ordinarily for the

19

jury. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002, 1012-13 (1989). The Ninth Circuit

20

Court of Appeals holds that an individual can prove entitlement to emotional distress damages

21

even in the absence of corroborating evidence and even in the absence of an egregious

22

violation, if the individual in fact suffered significant emotional harm and the circumstances

23

surrounding the violation make it obvious that a reasonable person would suffer significant

24

emotional harm. *In re Dawson*, 390 F.3d 1139, 1150-1151 (9th Cir. 2004). For example, where

25

it was alleged that defendants stated that in order to be considered for a loan modification,

26

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 9

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704       arthur@aeolegal.com

28

29

plaintiff would first have to default, the court concluded plaintiff alleged sufficient facts to

demonstrate defendants' conduct was both outrageous and outside the bounds of socially

tolerable conduct. *Andre v. BANA et al*, No. 1:11-cv-3077-CL, Dkt. # at __, (U.S. Dist. Ct.,

Oregon, March 21, 2012.)

In Washington, borrowers are generally responsible for shouldering the emotional

distress attendant financial crisis, unless the borrowers were induced into the crisis.

*Montgomery [Flynn] v. SOMA Financial Corp. et. al.*, No. C13-360 RAJ, ECF 40, pg.14:15-17,

(U.S. Dist., W.D. Washington, May 19, 2014). In *Montgomery*, Judge Richard A. Jones of this

Court, found that,

> Plaintiffs' allegations supporting their claim for outrage are the same as those
> underlying their CPA claims, … [O]f these allegations, the allegation that BoA
> [BANA] induced the Montgomerys to default and then attempted to
> foreclose on the property plausibly alleges extreme or outrageous conduct.

*Montgomery et al at* ECF 40, pg.14:15-17. Shortly after the decision in *Montgomery*, the Ninth

Circuit Court of Appeals affirmed this court's emotional distress damage award in a case

where a defendant's refusal to rectify the situation it created, and its violations of the

borrower's bankruptcy stay upended plaintiff's finances and efforts to manage her affairs. *In

re Snowden*, 769 F.3d 651, 657 (9th Cir., September 12, 2014). *See also; In re Breul*, 533 B.R.

782, 796-797 (Bkrtcy.C.D.Cal. 2015)(court found that a reasonable person would suffer

significant emotional harm where the defendant took a callous and lackadaisical attitude in

remedying its own violation of a discharge injunction by delaying removing a lien which

sabotaged an 83 year-old borrower's ability to refinance his home loan); *In re Cutting*, No. 14-

60309-7, U.S. Bkrptcy Ct., ECF 30, pg. 8, Montana, July 15, 2015)(the court found that the

emotional distress plaintiffs suffered was distinct from the pressures inherent in the

bankruptcy process, where defendants' discharge injunction violations deprived the debtor-

plaintiffs of the fresh start they earned in the bankruptcy process); *In re Ogden*, Nos. 15-cv-

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 10

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704     arthur@aeolegal.com

01274-RBJ, 11-19841-EEB, U.S. Dist. Ct., Colorado, ECF 19, pg. 21, (March 18, 2016)(the district court affirmed a bankruptcy court's decision-change to award emotional distress damages stating that suffering the uncertainty of whether the Bank was going to foreclose on plaintiff's home on one week's notice would cause any reasonable person to undergo enormous stress, which would be highly likely to result in some negative effect on her physical wellbeing); *Prather v. BANA*, *supra*, ECF 37 at pg. 19, (despite minimal allegations of egregiousness and emotional toll, the court found it was not incredible for BANA's actions to embarrass the ordinary person and found factual disputes as to whether BANA's actions would disturb the emotions of a person of ordinary sensibilities under an intrusion of privacy claim); *Hawkins v. BANA et al*, No. 2:16-cv-00827-MCE-CKD, ECF 18, pg. 9, (U.S. Dist. Ct., E.D. California, February 13, 2017)(plaintiffs contended they were current on their mortgage and wrongly advised. Those allegations, particularly when coupled with assurances that they were current and at no risk of foreclosure, were adequate to support a claim for IIED given that in order to keep their house, plaintiffs ultimately had to accept unfavorable terms from the company who purchased their home in foreclosure), *Oskoui v. JPMorgan Chase Bank N.A.*, 851 F.3d 851, (9th Cir., March 13, 2017)(reversing a district court's summary judgment in favor of JPMorgan Chase under California unfair business practice law, the panel held that Chase's manipulative loan modification process and its modification denial conspicuously missing the net present value ("NPV") calculation purportedly supporting its denial, amply supported a verdict in favor of the borrower on the grounds that the borrower was the victim of an "unconscionable process."  *Oskoui v. JPMorgan Chase*, at  857-858, *and Sundquist v. BANA, et. al.,* No.10-35624-B-13J, Adv.Pro. No. 14-02278, ECF 263, pgs.81, 83, (U.S. Bkrptcy. Ct., E.D. California, March 23, 2017)(the court awarded $300,000 in emotional distress damages to a couple where BANA induced default by making it a precondition to considering a loan modification and that was borrower's sole reason for defaulting, ignored opportunities to cure arrears, violated a bankruptcy stay by selling the property and then delayed its rescission

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF**
**RESTRAINING FORECLOSURE SALE**
Page - 11

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

1

2

3

while initiating eviction proceedings, failed to explain reasons for long intervals of apparent

inaction on loan modification applications often sitting on requests for months until declaring

the information stale sending applicants back to square one).

4

5

6

7

8

9

10

11

12

13

14

Ms. Tavares is not simply asserting modification denials, rather, the allegations are that

ServiSolutions told her that she needed a signed quitclaim deed and then not when it looked

even more obvious she could afford a modification, hid from her any evidence of application

of a pertial claim, and avoided a workout arrangement for eighteen months supports the

conclusion that ServiSolution's conduct is outrageous. *See Rey v. Countrywide Home Loans

et. al.*, No. 11-00142 JMS/KSC, ECF 62, pg. 23-24,(U.S. Dist. Ct., Hawaii, January 26, 2012)

(the court denied dismissal because the borrower's allegations did not simply assert a

modification denial, rather, the allegations that BANA failed to account for loan payments, told

the borrower that she would qualify for a modification and that foreclosure would not occur,

and hid from the borrower the true owner of the note and mortgage avoiding a work-out

arrangement, supported the conclusion that "BANA's conduct was outrageous[.]")

15

16

17

18

19

20

21

**B.      Plaintiffs Are Likely to Suffer Irreparable Loss Absent Injunction.**

Under the foreclosure sale rescheduled for November 17, 2017, Ms. Tavares now faces

the invasion of her rights to her home and property. Ms. Tavares has a well-grounded fear in

losing her home and that of her minor children. Ms. Tavares will suffer the harm explained

under the CPA injury element. In the current market, Ms. Tavares cannot afford to replace her

home with anything similar or adequate to the needs of six minor children. Tavares ¶17.

22

23

24

25

26

**C.      In This Instance Injunction Is In The Public Interest.**

Washington has clearly stated is public interest in assisting homeowners avoid

unnecessary foreclosure. 2011 SHB 1363, Chpt. 58, 62nd Legis. The Legislature has even

endowed housing counselors with a good faith duty to assist homeowners resolve their

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF
RESTRAINING FORECLOSURE SALE**
Page - 12

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com

28

29

foreclosure issues. RCW 61.24.160. When a servicer thumbs their nose at compliance, as ServiSolutions did here, Washington's interest in avoiding unnecessary foreclosures is eroded. Again, there is no serious question ServiSolution's actions have a public impact. In the context of a home loan mortgage sold and serviced by an entity who sells and services loans to hundreds, if not thousands of people, in multiple States, there is no question ServiSolution's acts have the substantial potential for repetition and affect the public interest. ServiSolutions boasts being the largest mortgage loan servicer in Alabama. In addition to the loans funded by AHFA, ServiSolutions services loans for housing finance agencies in Mississippi, Missouri, North Carolina and Washington. *See* http://www.ahfa.com/about.

### D.    Enjoining The Foreclosure and Balancing the Equities

Though Ms. Tavares is prepared to resume reasonable monthly payments (with an unpaid principal balance that does not carry the arrears caused by ServiSolution's delay), the DTA is expressly purposed to protect good faith lenders. *Bowcutt* v. *Delta Northstar Corp.*, 95 Wn.App 311, 321 (Wn.App. Div.III, 1999). Nothing ServiSolutions has done related to servicing Ms. Tavares' default could be categorized as the good faith deserving of the DTA's protection. An FHA loan's partial claim would have protected the parties from foreclosure, instead ServiSolutions chose to forgo those protections to steer Ms. Tavares toward foreclosure. The DTA should be construed to further three basic objectives; to be efficient and inexpensive, to prevent wrongful foreclosure, and to promote stability in land titles. *Cox v. Helenius,* 103 Wn.2d 383, 387 (1985). ServiSolution's predatory servicing mocks those objectives and fails to merit DTA protection. No prejudice will visit ServiSolutions if Ms. Tavares is spared the obligation of periodic payments to the court clerk. Principles of equity and public interest considerations require courts examine appropriate injunction terms in light of the circumstances and here it is appropriate it is appropriate to refrain from ordering that Ms. Tavares make payments to the court registry.  *Bowcutt*, 95 Wn.App at 321.

**LCR 65(b) MOT. FOR INJUNCTIVE RELIEF
RESTRAINING FORECLOSURE SALE**
Page - 13

1

2

IV.   CONCLUSION

3

An injunction is necessary to preserve the status quo and is in the interest of fairness and

4
justice. The Courts are likely aware it is better to resolve these matters prior to foreclosure

5
sale, and avoid a multiplicity of new issues recalling a deal after a sale. The facts presented

6
show ServiSolutions engaged in bad faith predatory loss mitigation practices. The home value

7
provides a security to AHFA (ServiSolutions). The prejudice to plaintiffs is enormous in

8
comparison to that of defendant's, accordingly, plaintiffs respectfully move that this motion be

9
granted.

10
Dated this 27th day of October, 2017.

11
The Law Office of Arthur E. Ortiz

12

13

14
_____
Arthur E. Ortiz, WSBA No. 26676

15
Attorney for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

28

29

ARTHUR  E. ORTIZ, ATTORNEY
6015 CALIFORNIA AVE. S.W., NO. 203
SEATTLE, WASHINGTON 98136
TEL 206-898-5704      arthur@aeolegal.com